[L. A. No. 20205. In Bank. May 28, 1948.]

BEBE JORGENSEN, Appellant, v. EARLE M. JORGEN-
SEN, Respondent.

Mitchell, Silberberg & Knupp, Guy Knupp and Peery Price for Appellant.

O'Melveny & Myers, Louis W. Myers and Pierce Works for Respondent.

TRAYNOR, J.—The parties were married in 1924. They separated in 1944 and executed a property settlement agreement providing that following their divorce the husband would pay the wife $30,000 annually for her support and that of their children. The wife thereafter brought an action for divorce in which the husband made no appearance. She obtained an interlocutory decree in which the property settlement agreement was approved and adopted, and a final decree was subsequently entered. In the present action plaintiff seeks to set aside the provisions of the interlocutory decree relating to the property settlement agreement, on the grounds of fraud or mistake. She alleged in her amended complaint that some of the assets listed in the agreement as separate property of the husband were community property and that defendant procured her consent to the agreement by fraudulently representing those assets as his separate property. Plaintiff further alleged that she and the attorney who represented her when the property settlement agreement was made, relying exclusively upon defendant's representations, did not investigate whether the assets in question were community or separate property. Plaintiff alleged as an alternative cause of action that defendant made his representations by mistake upon the advice of his counsel.

The agreement recites that it ''is based upon a full disclosure of all real and personal properties and shall constitute a final settlement, adjustment and division of the property and the financial matters of the parties.'' Plaintiff alleges that she consented to this statement and was satisfied with the contract because she was persuaded by the representations of defendant that under the agreement she received half the community property; that defendant had exclusive control and management of the property of the parties throughout their married life and was therefore aware that the property listed in the agreement as his separate property was community property; that she was not familiar with the facts, since she was preoccupied with her duties as housewife and mother; that in making the agreement and submitting it to the court she relied on defendant's honesty and the truthfulness of his representations; and that the attorney who represented her in the negotiations with respect to the property settlement agreement and had previously represented her in the negotiations with respect to a voting trust agreement with defendant was recommended to her by defendant, who paid the fee for his services.

In his answer defendant denied that the property settlement agreement classified as his separate property any assets in which the wife had a community interest or that he made false representations regarding any assets mentioned in the agreement. He also filed a cross-complaint praying that his title to the assets in question be quieted. At the trial defendant objected to the introduction of any evidence by plaintiff, on the ground that her amended complaint was insufficient to state a cause of action. The court sustained this objection, and after defendant had introduced into evidence the property settlement agreement and the interlocutory and final decree of divorce, entered a judgment for defendant on the complaint and cross-complaint.

Since the court entered judgment on the pleadings with respect to plaintiff's amended complaint, it must be assumed for the purposes of this appeal that the allegations therein are true. With regard to the partition of the community property plaintiff alleged that before the property settlement agreement was executed, the parties agreed that each was to receive half the community property and that defendant represented to her that the agreement, drafted by his at-

torneys, gave her half the community property, whereas actually it deprived her of her community property interest in certain shares of stock, namely, half the outstanding stock of the Earle M. Jorgensen Company (hereafter referred to as Jorgensen Company) and all the outstanding stock of the Earle M. Jorgensen-Forge Division (hereafter referred to as Forge Division).

It appears from the amended complaint that the outstanding stock of the Jorgensen Company consists of 1,000 shares, 500 of which were represented by certificate No. 14 and 500 by certificate No. 15 at the time the property settlement agreement was executed. Defendant owned the 500 shares represented by certificate No. 14 before his marriage to plaintiff. He acquired the 500 shares represented by certificate No. 15 from his former partner in 1927, approximately three years after the marriage. Thereafter defendant remained the sole manager of the corporation. According to the terms of the property settlement agreement the parties in 1943 "entered into a voting trust agreement pursuant to which said one thousand (1,000) shares were to be held and are now held by the Husband as voting trustee. Prior thereto, said five hundred (500) shares evidenced by Certificate No. 14 were the sole and separate property of the husband, and said five hundred (500) shares evidenced by Certificate No. 15 were community property of the parties. Said voting trust agreement provides that the beneficial interests under such trust shall be held by the parties in the same manner as said shares were owned by them immediately prior to the creation of said trust . . . . The parties hereby confirm the said beneficial interest is held and owned by them in said manner, and that upon termination of said voting trust said five hundred (500) shares evidenced by Certificate No. 14 will be owned by the Husband as his separate property, and said five hundred (500) shares evidenced by Certificate No. 15 will be held and owned by the parties as community property."

The property settlement agreement also provided that "In the event that either party shall at any time hereafter obtain a final decree of divorce from the other, but not otherwise, the following provisions of this paragraph shall become and shall thereafter remain effective . . . . The 500 shares of Earle M. Jorgensen Company evidenced by Certificate No. 14, and one-half of the 500 shares of said corporation evidenced by Certificate No. 15 shall be the sole and separate

property of the Husband, and the other one-half of said 500 shares evidenced by Certificate No. 15 shall be the sole and separate property of the Wife . . . ." Plaintiff alleges, however, that the 500 shares represented by certificate No. 14 and designated in the agreement as separate property had a value not exceeding $55,000 when the parties married and had only slightly increased in value when in 1927 defendant acquired the other 500 shares and became the sole manager of the corporation; that these shares were worth more than $1,000,000 when the parties executed the property settlement agreement; and that this increase in value was primarily a result of defendant's skill and industry in managing the corporation. She contends therefore that these 500 shares were largely community property at the time of the property settlement agreement.

As to the shares of the Forge Division, plaintiff alleges that this corporation was organized in 1942 with an authorized capital stock of 1,000 shares, each with a par value of $100, of which only three shares were issued, and that these shares were acquired by defendant with community property funds; that they were worth $300 when the corporation was organized but that by the time the property settlement agreement was executed their value had been augmented to $175,000 by the skill and industry of defendant as manager of the corporation. Plaintiff contends that these shares were therefore entirely community property when the property settlement agreement was executed and that it was through the fraud of defendant that the property settlement agreement provides that "All shares of Earle M. Jorgensen Co.—Forge Division, a California corporation, standing in the name of the husband . . . are his sole and separate property."

Plaintiff contends that the part of the interlocutory decree approving and adopting the property settlement agreement was induced by defendant's false representations and that they constitute extrinsic fraud or mistake entitling her to equitable relief from the decree. Defendant on the other hand contends that if he perpetrated any fraud it was intrinsic and there can be no equitable relief from the decree. Plaintiff relies on *Taylor* v. *Taylor*, 192 Cal. 71, 79 [218 P. 756, 51 A.L.R. 1074], and *Milekovich* v. *Quinn*, 40 Cal.App. 537 [181 P. 256]. Defendant relies on *Howard* v. *Howard*, 27 Cal.2d 319 [163 P.2d 439]. The cases relied on by plain-

tiff held that equitable relief from a divorce decree approving and adopting a property settlement agreement is available to a wife if the husband fraudulently secured her consent to the agreement by concealing community property assets, for such concealment precludes her from establishing her rights thereto. The Howard case, *supra,* held that a husband was not entitled to equitable relief from the provisions of a divorce decree approving and adopting a property settlement agreement upon the allegation that he entered into the agreement in reliance upon representations of his wife that she was a faithful wife and mother, whereas during coverture and before the execution of the agreement she had repeatedly committed adultery. In that case it was determined that by submitting the property settlement agreement to the court the issue as to its fairness had been tendered in the divorce action and that therefore the alleged fraud perpetrated by the wife was intrinsic to the issues involved in the divorce action and should have been guarded against at the trial thereof. Defendant contends that by the same reasoning the fraud alleged in the cases on which plaintiff relies was intrinsic.

*Taylor* v. *Taylor,* 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074] and *Milekovich* v. *Quinn,* 40 Cal.App. 537 [181 P. 256] as well as *Howard* v. *Howard,* 27 Cal.2d 319 [163 P.2d 439], recognize that when equitable relief from a final judgment is sought, it makes an important difference whether the fraud or mistake is intrinsic or extrinsic to the issues involved in the case in which the judgment was entered. ■ The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment, even though a party has persuaded the court or the jury by false allegations supported by perjured testimony. This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case. (*Gale* v. *Witt,* 31 Cal.2d 362, 365 [188 P.2d 755]; *Howard* v. *Howard,* 27 Cal.2d 319, 321 [163 P.2d 439]; *Westphal* v. *Westphal,* 20

Cal.2d 393, 397 [126 P.2d 105]; *Larrabee* v. *Tracy*, 21 Cal. 2d 645 [134 P.2d 265]; *Olivera* v. *Grace*, 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328]; *Carr* v. *Bank of America*, 11 Cal.2d 366, 371-373 [79 P.2d 1096, 116 A.L.R. 1282]; *Purinton* v. *Dyson*, 8 Cal.2d 322, 325-326 [65 P.2d 777, 113 A.L.R. 1230]; *Ringwalt* v. *Bank of America*, 3 Cal.2d 680, 684-685 [45 P.2d 967]; *Caldwell* v. *Taylor*, 218 Cal. 471, 476-479 [23 P.2d 758, 88 A.L.R. 1194]; *Tracy* v. *Muir*, 151 Cal. 363, 371 [90 P. 832, 121 Am.St.Rep. 117]; see, Restatement, Judgments, p. 588; 3 Freeman, Judgments (5th ed.), §§ 1233-1235; 3 Pomeroy, Equity Jurisprudence (5th ed.), p. 610.) The terms "intrinsic" and "extrinsic" fraud or mistake are generally accepted as appropriate to describe the two different categories of cases to which these policies of the law apply (Freeman, *ibid.*, p. 2568). They do not constitute, however, a simple and infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment. (*Larrabee* v. *Tracy*, 21 Cal.2d 645, 649 [134 P.2d 265]; see, Freeman, *ibid.*, p. 2570.) ██ It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.

██ The latter policy applies when a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered. "The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud, for which equity may relieve from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony, and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule." (3 Freeman, Judgments (5th ed.), p. 2576; see, *Laun* v. *Kipp*, 155 Wis. 347 [145 N.W. 183, 5 A.L.R. 655].) In this state equitable relief has been granted from final judgments settling the accounts of guardians, administrators, or executors who withheld information that would have enabled

the beneficiaries to attack the accounts (*Lataillade* v. *Orena,* 91 Cal. 565, 576 [27 P. 924, 25 Am.St.Rep. 219] ; *Silva* v. *Santos,* 138 Cal. 536, 541 [71 P. 703] ; *Aldrich* v. *Barton,* 138 Cal. 220, 223 [71 P. 169, 94 Am.St.Rep. 43] ; *Simonton* v. *Los Angeles Trust & Sav. Bank,* 192 Cal. 651, 655, 657 [221 P. 368] ; *Morgan* v. *Asher,* 49 Cal.App. 172, 182 [193 P. 288] ; see *Griffith* v. *Godey,* 113 U.S. 89, 93 [5 S.Ct. 393, 28 L.Ed. 934] ). The same principle applies to decrees distributing the estate of a decedent adversely to the rights of beneficiaries who have been precluded from pursuing their rights by concealment of facts by the fiduciary (*Larrabee* v. *Tracy,* 21 Cal. 2d 645, 649 [134 P.2d 265] ; *Purinton* v. *Dyson,* 8 Cal.2d 322, 325 [65 P.2d 777, 113 A.L.R. 1230] ; *Campbell-Kawanna-nakoa* v. *Campbell,* 152 Cal. 201, 210 [92 P. 184] ; *Bacon* v. *Bacon,* 150 Cal. 477, 490 [89 P. 317] ; *Sohler* v. *Sohler,* 135 Cal. 323 [67 P. 282, 87 Am.St.Rep. 98] ; see, *Carr* v. *Bank of America,* 11 Cal.2d 366, 371-374 [79 P.2d 1096, 116 A.L.R. 1282] ; *Ringwalt* v. *Bank of America,* 3 Cal.2d 680, 684 [45 P.2d 967] ) and to other probate decrees obtained under similar circumstances. (*Caldwell* v. *Taylor,* 218 Cal. 471, 475 [23 P.2d 758, 88 A.L.R. 1194] ; *Estate of Ross,* 180 Cal. 651, 658 [182 P. 752] ; *Curtis* v. *Schell,* 129 Cal. 208, 215 [61 P. 951, 79 Am.St.Rep. 107] ; see 23 Cal.L.Rev. 79, 83.)

▮ The same principle also applies in the cases concerning equitable relief from judgments approving and adopting property settlement agreements relied on by plaintiff. In *Milekovich* v. *Quinn,* 40 Cal.App. 537 [181 P. 256], the wife alleged in a divorce action that her husband held securities worth sixty-thousand dollars, which were community property. The husband denied her allegation, stating in his answer and in an affidavit filed in reply to an application of the wife for alimony pendente lite that the securities held by him were worth not more than two thousand dollars. Relying on these representations, the wife entered into a property settlement agreement specifying the community property assets that she was to receive and providing that the husband should receive the remainder of the community property. The agreement was approved and adopted by the court in an interlocutory divorce decree. The wife sought equitable relief from the provisions of the decree relating to the agreement, since the husband had concealed from her bonds in the par value of forty-five-thousand dollars acquired with community property funds, which he had withdrawn from his safe-

deposit box and delivered to a custodian after the commencement of the divorce action.

In *Taylor* v. *Taylor*, 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074], the wife entered into a property settlement agreement wherein she released all obligations of the husband as to support and alimony and disclaimed all her rights to community property in consideration of the payment of $500 to her by the husband. She sought equitable relief from a divorce decree approving and adopting this agreement, on the ground that the husband had concealed from her the existence of certain real property acquired with community property funds placing it in the name of his brother.

As the manager of the community property the husband occupies a position of trust (Civ. Code, §§ 172-173, 158), which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement. When community property is entrusted to the wife, she likewise occupies a position of trust. It has therefore been held that a husband may obtain equitable relief from a divorce decree incorporating a property settlement agreement obtained by the fraud of the wife in concealing community assets entrusted to her control. (*Boullester* v. *Superior Court*, 137 Cal.App. 193, 195 [30 P.2d 59].) It is immaterial whether the husband or the wife has submitted the property settlement to the court for approval; the fraud of one spouse in concealing the assets, if not discovered by the other, precludes the latter from protecting his or her rights as to the concealed assets in the divorce proceeding.

*Howard* v. *Howard*, 27 Cal.2d 319 [163 P.2d 439], is clearly distinguishable from these cases, for in that case the husband did not allege that the wife procured the property settlement agreement by concealing information in violation of a fiduciary duty of disclosure. Her alleged fraud related to acts of adultery, which she was under no fiduciary duty

to disclose, for those acts constituted a ground for divorce. The law imposes upon a spouse seeking a divorce the burden of proving facts constituting a statutory ground for divorce and of presenting corroboration of his own testimony or of admissions of the other spouse. (Civ. Code, § 130; Code Civ. Proc., § 2079; *Flynn* v. *Flynn,* 171 Cal. 746, 748 [154 P. 837]; *Deyoe* v. *Superior Court,* 140 Cal. 476, 483 [74 P. 28, 98 Am. St.Rep. 73]; see also, Civ. Code, § 132; *Grannis* v. *Superior Court,* 146 Cal. 245, 248 [79 P. 891, 106 Am.St.Rep. 23].) If failure to reveal grounds for divorce warranted equitable relief from divorce judgments, the stability of such judgments and titles to property thereunder would be seriously imperiled.

 The issue in the present case is whether under the facts stated in her amended complaint, the wife was deprived of a fair opportunity to submit her case fully to the court because of a breach of a fiduciary duty of the husband. There is no allegation in the complaint that defendant concealed assets that were part of the community property. The assets were disclosed, and the complaint is based on the theory that defendant fraudulently claimed certain community property as his separate estate. The classification of property as separate or community is frequently difficult. A husband at the time of divorce or separation is entitled to take a position favorable to his own interest in claiming as his separate property assets that a court might hold to be community property. Confronted with the assertion by the husband that certain assets are his separate property the wife must take her own position and if necessary investigate the facts. (*Champion* v. *Woods,* 79 Cal. 17, 20 [21 P. 534, 12 Am.St. Rep. 126]; *Dowling* v. *Spring Valley Water Co.,* 174 Cal. 218, 222 [162 P. 894]; *Haviland* v. *Southern California Edison Co.,* 172 Cal. 601, 609 [158 P. 328]; see, *Brown* v. *Brown,* 170 Cal. 1, 5 [147 P. 1168]; *Lindley* v. *Hinch,* 57 Cal.App.2d 717, 719 [135 P.2d 421].) If the wife and her attorney are satisfied with the husband's classification of the property as separate or community, the wife cannot reasonably contend that fraud was committed or that there was such mistake as to allow her to overcome the finality of a judgment. In the present case plaintiff alleged that she and her attorney relied exclusively on her husband's representations that the shares in question were his separate property and that her attorney made no examination or investigation to ascertain whether the shares were community property. She did not allege that

her attorney intentionally failed to protect her interests. Plaintiff is barred from obtaining equitable relief by her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied June 24, 1948.