[Civ. No. 10034.   Third Dist.   Mar. 9, 1961.]

WORTH SPITLER, Appellant, v. RUSS C. AVERY, Respondent.

T. N. Petersen for Appellant.

Joseph J. Lebeda for Respondent.

WARNE, J. pro tem.*—Appellant appeals from the judgment entered upon an order sustaining a general demurrer to plaintiff's fourth amended complaint without leave to amend in an action to recover a real estate broker's commission.

The fourth amended complaint alleges that Russ C. Avery and Stella W. Avery are the owners of certain farm land and that the respondent, Russ C. Avery, employed appellant to act as real estate broker to sell said land, whereby appellant was to receive as a commission for his efforts 5 per cent of the gross price, as is more fully set forth in six letters, Exhibits ''A'' through ''F,'' which are attached to the complaint and made a part thereof. It is further alleged that appellant

---

*Assigned by Chairman of Judicial Council.

performed his part of the agreement and obtained as purchasers of the real property John S. McBee and Phylis McBee, which purchase was to be in accordance with the terms of the employment contract, and that thereafter the respondent entered into an agreement directly with the McBees for the purchase and sale of the real property.

Appellant contends that the series of letters, Exhibits "A" through "F," attached to the complaint, set forth an agreement by the respondent, Russ C. Avery, to hire appellant as a real estate broker and fully satisfy the provisions of section 1624, subdivision 5, of the Civil Code, which provides that an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission is invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent. The letters in question are all addressed to the appellant and were all signed by respondent, Russ C. Avery, except Exhibit "B." In substance, they read as follows:

Exhibit "A"

"Sept 29th 1958
La Verne, Calif.

"In reply to your letter of the 24th I had planned to put my ranch on the market next summer. . . .

"As to the price, I have 19,500 in the ranch including leveling of 1500.00 plus a ful [sic] line of machinery. . . .

"I will pay com. on 19,500.00 with 4000 or 5000 down I have a second on it for about 2000 which I would pay off and take a first on the bal [balance] at 6% on a monthly pay't.

"However I have the ranch rented, if he takes it for another year, which I think he will, however a deal might be made with him, one way or another, . . . .

"If you would care to have a talk with my tenant you may do so, as he has a business in Merced, he is Mr. John McBee, 2104 G St Merced."

Exhibit "B"

"Oct. 7th 1958
La Verne Calif.

"I recieved [sic] your letter today, after reading it over a couple plans came to me that might be worked out. . . .

"I believe you might get Mr. McBee to release the lease

for so much money, or we could trade him some of the machinery that your buyer wouldnt [*sic*] need. . . .

". . . [I]f you couldnt [*sic*] get what your praspect [*sic*] thought was right for the rest of the ranch to McBee, I would be willing to take off from the selling price to make up the difference in order to make everybody happy."

### Exhibit "C"

"Oct 10 1958

La Verne Calif

"I recieved [*sic*] your letter yesterday, and will answer, so you will have to explain a few things to your prospest [*sic*]. . . .

"It looks like we will have to get together with McBee somehow. . . ."

### Exhibit "D"

"LaVerne Calif

Oct 22 1958

"After talking to you the other night, I have been thinking how and what will be the best deal for your Client, and Mr. McBee.

"Today I recived [*sic*] a letter from McBee, . . . .

"I realy [*sic*] believe, your best bet is you can get both parties together would be for your client to take posession [*sic*] of the buildings and what acerage [*sic*] there is around the buildings and try to make a deal with McBee to rent the farm land and use the machinery for the next year, and if you will see what McBee will give for it without the buildings, I could take enough off the selling price to make up the difference to what your Client would think was right. . . .

"I am writing McBee tonight, telling him you have a deposit on the ranch, and that I would like to sell it, if he can get together with you, so everybody will be satisfied."

### Exhibit "E"

"Nov. 5th 1958

LaVerne Calif

"I just recieved [*sic*] your letter . . . I went to see my attorney . . . , and he advised me to sell the ranch subject to the lease. . . .

"So I am writing you to go ahead this way subject to

the lease. However I believe you can come to some sort of an agrement [*sic*] with Mr. McBee, if you handle him easy.

". . . [A]s I said I would b [*sic*] willing to make up some difference as to the rent McBee would offer your client.

"Hoping that you can come to some kind of a deal with them, . . ."

Exhibit "F"

"LaVerne Calif.

Nov 12 th 1958

"I recieved [*sic*] your letter today . . . , Mr. McBees [*sic*] lease expires April 1 1960. . . .

"If your customer is not satified with, the lease here is a thought you say he has agred [*sic*] to put up 3500.00 . . . , so if it will help your deal Ill [*sic*] take 500, . . . making the selling price 19000.00 even, which will pay off the second pay you your com and have a few dollars left after escrow cost. . . ."

Appellant relies heavily upon that portion of respondent's first letter, Exhibit "A," wherein is found the statement "I will pay com. [commission] on 19500.00 with 4000 or 5000 down I have a second on it for about 2000 which I would pay off and take a first on the bal [balance] at 6% on a monthly pay't [payment]." He argues that this letter, when read in conjunction with the letters following, clearly makes out an understanding and agreement that respondent Avery was hiring appellant to sell respondent's property.

We feel that there is merit in appellant's contention. While respondent's first letter, Exhibit "A," and the three following letters, Exhibits "B," "C" and "D," clearly support the inference that the respondent intended to sell the ranch upon the terms specified in said letters, and also that he would pay a commission of 5 per cent, the language used in the series up to that point falls short of warranting the inference that the appellant was employed by respondent as a broker. (*Morrill* v. *Barneson,* 30 Cal.App.2d 598 [86 P.2d 924].) However, when we come to the letter which is Exhibit "E," we find respondent making a new proposal to sell, i.e., "subject to lease," as advised by respondent's attorney whom he says he had consulted. The letter then says: "So I am writing you to go ahead this way subject to the lease." In view of the prior letters, it is our conclusion that the express authorization for appellant to "go ahead," that

is, make a sale, would support an inference of employment. Therefore the complaint stated a cause of action against a general demurrer.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.