[Civ. No. 32037.   Second Dist., Div. Five.   Nov. 4, 1968.]

WILLIAM PAULSEN, Plaintiff and Respondent, v. JOHN E. LEADBETTER et al., Defendants and Appellants.

Hitchcock & Bowman and Larry Bowman for Defendants and Appellants.

Donald C. Kahl and Lyle D. Herrick for Plaintiff and Respondent.

STEPHENS, J.—This is an action for recovery of a broker's commission. The case was tried before a jury. The jury returned a verdict in favor of plaintiff broker for $6,500 on January 17, 1967, and judgment was duly entered on January 18, 1967. On January 16, 1967, at the close of all the

testimony in the case and before the matter was submitted to the jury, defendants made a motion for nonsuit under section 581c of the Code of Civil Procedure. The motion was denied.

Most of the relevant facts are undisputed. The transaction began with a card being sent by plaintiff to defendants inquiring whether defendants were interested in selling their property. This was returned by defendants, along with a letter from defendant John E. Leadbetter dated June 26, 1964. On or about July 7, 1964, a potential buyer was obtained by the plaintiff. The defendants accepted the offer and also signed a deposit receipt. Shortly thereafter, an escrow was opened consisting of escrow instructions, together with a document entitled ''Instructions To Pay Commission.'' The sale was not consummated. The buyer began a suit for specific performance, but this suit was later mutually terminated by the parties, and the transaction was rescinded. There is no evidence in the record that the failure of the escrow to close was the result of either party's wilful default. It cannot be ascertained whether such evidence would have been produced, since the trial judge curtailed this avenue of inquiry on the basis that it was collateral and would only confuse the jury.

As previously noted, judgment was entered in favor of plaintiff on January 18, 1967. ▮ Defendants appeal only from the denial of their motion for nonsuit on January 16, 1967, which is not in and of itself appealable. (*Estate of Roberson*, 114 Cal.App.2d 267, 268 [250 P.2d 179].) However, under the charitable decision in *Evola* v. *Wendt Constr. Co.*, 158 Cal.App.2d 658, 662 [323 P.2d 158], the appeal may be considered from the subsequent judgment entered. (*Willson* v. *Burner*, 230 Cal.App.2d 947, 948 [41 Cal.Rptr. 449].) We interpret the notice of appeal as intended to take an appeal from the judgment. (*Smith* v. *Smith*, 126 Cal.App.2d 194, 195 [272 P.2d 118].)

▮ The crucial issue on this appeal is whether the four documents previously referred to constitute an ''authorization to sell'' in writing as required by Civil Code section 1624, subdivision 5.

▮ The first document which plaintiff relies upon is the letter of June 26, 1964, sent to him by defendant John E. Leadbetter. This letter was in response to a printed business inquiry card previously sent by plaintiff to defendant. The printed inquiry card contained three statements, each preceded by a small box in which the recipient was requested to place a checkmark if such statement was applicable, and read as follows:

''□ I AM INTERESTED IN SELLING MY ANTELOPE VALLEY PROPERTY. PLEASE PHONE ME AT:

| (Phone Number) | (Most Convenient Time) |
|---|---|

— OR —

□ I AM SENDING ADDITIONAL INFORMATION
□ I AM NOT INTERESTED IN SELLING MY ANTELOPE VALLEY PROPERTY AT THIS TIME.

Signature''

Defendant John E. Leadbetter placed a checkmark in the box preceding the second statement, and returned the card with his signature. The letter of June 26, 1964, in relevant part stated that ''our minimum current price is $545/net to seller in event a suitable opportunity for sale should develop.'' Nowhere in the letter is there any express affirmation that at this juncture defendants are employing plaintiff as broker. There is no reference whatever to the fact of plaintiff's employment.

In *Franklin* v. *Hansen,* 59 Cal.2d 570 [30 Cal.Rptr. 530, 381 P.2d 386], the court considered a telegram which stated that ''this is [to] confirm that I will sell. . . .'' There the court reversed a judgment for the plaintiff, stating (at pp. 572-574) : ''We have before considered the nature of a memorandum sufficient to satisfy subdivision 5 of section 1624. (See *Pacific Southwest Dev. Corp.* v. *Western Pac. R.R. Co.,* 47 Cal.2d 62 [301 P.2d 825].) There a broker sued to recover compensation for services rendered to a buyer. . . .

''At page 69 in the foregoing case the court stated : 'The only writing with which defendant can be charged here is the letter of August 29, 1950 . . . and . . . it made no reference to the fact of employment by defendant of plaintiff. . . . The authorities require that a writing ''subscribed by the party to be charged, or his agent'' must unequivocally show the fact of employment of the broker seeking to recover a real estate commission [citations]. It must therefore be concluded that the writings here are insufficient . . .'

''Here, too, as to the content thereof, the writing in the instant case is similar to that in the cited case since it also fails to expressly recite or make reference to the existence of any employment contract. . . . In both cases parol evidence demonstrated that the real nature of the agreement between the parties was one of employment; that the broker in each instance rendered substantial, bargained-for-services which culminated in the achievement of the objective for which

employed; and that neither broker was guilty of overreaching or improper and unethical practices. It does not appear that we can give full effect to the *Pacific Southwest Dev. Corp.* case and at the same time sustain the instant award.

"The sufficiency of a writing to satisfy the statute of frauds cannot be established by evidence which is extrinsic to the writing itself."

The same result was reached in *Sanstrum* v. *Gonser*, 140 Cal.App.2d 732, 735 [295 P.2d 532], where it was held that a letter written from a landowner to a broker stating that "we have set a price" on the land was not a sufficient memorandum since the "setting of a price" on land does not imply the employment of a broker.

It is evident that the letter in the present case is clearly insufficient as a memorandum of employment. It is equally evident that the later documents upon which plaintiff relies cannot breathe life into this dead letter (*Sanstrum* v. *Gonser, supra*), although they may be considered along with such letter to determine whether the documents taken together constitute a sufficient memorandum. (*Spitler* v. *Avery*, 189 Cal.App. 2d 811 [11 Cal.Rptr. 724].) But where, as here, the letter is totally devoid of any reference to plaintiff's employment, the remaining documents must stand or fall on their own contents. We turn to an examination of the remaining documents.

■ The second document upon which plaintiff relies is a deposit receipt which recites that the "undersigned (seller) agrees to pay Broker . . . employed by the undersigned to sell said property as commission the sum of Six Thousand Five Hundred Dollars. . . ."

The new California Real Estate Association Standard Form Real Estate Purchase Contract and Receipt for Deposit (1967) contains essentially the same language as that found in the "Deposit Receipt" in the present case.[1] The Continuing Education of the Bar book on Real Estate Sales Transactions reprints the new form (§ 4.67), and in explanation of the particular language with which we are concerned states (p. 120) : "The seller is now protected against liability to the named broker for commission unless the sale closes or the seller either breaches or recovers for the buyer's breach." On page 170 of the same text, it is stated: "If the broker does not have a prior listing agreement, he must look solely to the

---

[1]The 1967 form provides: "The undersigned Seller has employed the Broker above named and for Broker's services agrees to pay Broker, as a commission, the sum of _____ . . . ."

deposit receipt for his right to a commission. If the sale is not consummated because of mutual rescission or breach by the buyer, the broker will not be permitted to recover a commission unless he can show that the seller and the broker intended the commission to be earned on execution of the agreement. See *Collins* v. *Vickter Manor, Inc.* (1957) 47 C.2d 875, 306 P.2d 783.

"But if the transaction is not completed because of the seller's . . . breach of contract, the broker can recover his commission regardless of any of the other rules stated above. [Citations.]"

In the *Collins* case, the plaintiff broker placed reliance upon a deposit receipt which contained language similar to that in the present case. The trial court had sustained a demurrer to plaintiff's complaint for failing to state a cause of action. The Supreme Court reversed on the following basis: "The order sustaining the general demurrer is untenable because the complaint alleges . . . facts from which . . . we must infer that plaintiffs and the buyer did everything which the agreement required of them and that *consummation was prevented solely by the arbitrary refusal of defendant corporation and its officers to proceed with the transaction.*" [Italics added.] (47 Cal.2d at p. 881.) The implication is clear that absent such allegations of breach by the seller (and absent such proof at trial), plaintiff broker could not recover. Recovery would be precluded under the rule of *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856], where the court held (p. 306): "Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract." In *Chapman* v. *Gilmore,* 221 Cal.App.2d 506, 507 [34 Cal.Rptr. 515], "[p]laintiff's complaint alleged he had procured the execution of the standard form deposit receipt commonly used by real estate brokers in Los Angeles County." In ruling on the propriety of the sustained demurrer, the court stated (p. 510): "Recovery could be had in this case only by . . . pleadings that would allege . . . that seller arbitrarily refused to consummate the sale, notwithstanding that the buyers supplied by plaintiff were at all times ready, able and willing to buy the property." See also *Mitchell* v. *Johnston,* 140 Cal.App.2d Supp. 982 [298 P.2d 170]. The complaint filed in the present case makes no affirmative allegation of a breach by either party,

but merely refers to the specific performance suit then pending against the seller by the buyer.

We conclude that the deposit receipt in the present case does not qualify as a sufficient memorandum upon which to predicate the recovery of a broker's commission.

Lastly, we direct our attention to the escrow instructions including a document entitled "Instructions To Pay Commission" attached thereto which instructed the bank to pay the broker "[u]pon close of escrow . . . the sum of $6500.00. . . ."

In *Billings* v. *Rexford Park Apts.*, 244 Cal.App.2d 317 [52 Cal.Rptr. 914], plaintiff broker sought to overcome a sustained demurrer on the basis of written escrow instructions wherein the defendant seller agreed to "[p]ay to the . . . broker as a commission for services rendered. . . ." a stated sum. The court stated (p. 323) : ". . . it is apparent that our courts have taken the position that if a broker fails to protect himself with a written employment contract of his own for the payment of a commission, and relies on an oral promise and an agreement between third parties to which he is not a party, he must stand or fall on that agreement and if the sale is not consummated the commission does not become due. He cannot complain if through the nonperformance of the agreement his own contingent rights be lost. [Citations.]" See also *Wilshire Realty Co.* v. *Kry Corp.*, 250 Cal.App.2d 269 [58 Cal. Rptr. 469] and *Ira Garson Realty Co.* v. *Brown*, 180 Cal.App. 2d 615 [4 Cal.Rptr. 734].

It is evident from the foregoing analysis that the three documents relied upon by plaintiff, whether considered alone or together, are insufficient to constitute an "authorization to sell" as required by Civil Code section 1624, subdivision 5.          The letter is deficient for failure to make any reference to plaintiff's employment.          The deposit receipt and escrow instructions are deficient because they are predicated for their efficacy upon the consummation of the sale. If the broker should suffer any hardship by the construction we have placed on the documents upon which he relies, it is one inherent in the form of the contract entered into, and which was the only means he chose for his protection. (*Jennings* v. *Jordan,* 31 Cal.App. 335, 338 [160 P. 576].)

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.